IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MASOOD AHMED, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| LOWE'S COMPANY INC. | : | NO. 06-4798 |
| | : | |



FILED
JUL 3 1 2008
MICHAEL E. KUNZ, Clerk
By_____Dep. Clerk

**MEMORANDUM: RE SUMMARY JUDGMENT**

Baylson, J.                                                                                  July 31, 2008

I.   **Background**

   A.   **Factual Background**

   This is an employment discrimination action, before the Court on Defendant's ("Defendant" or "Lowe's") Motion for Summary Judgment. (Doc. No. 36). In his Complaint (Doc. No. 1) Plaintiff ("Plaintiff" or "Ahmed") alleges that he was subjected to discrimination, retaliatory discharge, and a hostile work environment based on his race (Asian) and his national origin (Pakistani). He brings this action under Title VII of the Civil Right Act of 1964 ("Title VII"), 42 U.S.C. 2000e et seq., Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("§ 1981"), and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951 et seq.[1] Plaintiff also asserts common law claims of negligence and intentional infliction of emotional distress.

   Ahmed began working for Lowe's on May 9, 1996, at a branch location in Westminster,

---

[1] Claims filed pursuant to the PHRA and § 1981 are analyzed under the same framework as Title VII claims. Patterson v. McLean Credit Union, 491 U.S. 164, 186 (1989).

1

Maryland. In December 2003, Ahmed accepted a position as a Zone Manager at a new Lowe's store in Sinking Spring, Pennsylvania, which was known under Lowe's corporate nomenclature as Store #1717. The Store Manager at #1717 was Douglas Schmidt ("Schmidt"), who acted as Ahmed's supervisor.

Plaintiff contends that Schmidt consistently treated him less favorably than other management employees. Plaintiff claims that Schmidt called him a liar and a hypocrite, accused him of being incompetent, and asked him on at least one occasion whether or not he was born in the United States. Schmidt also spoke to Plaintiff after several employees whom Plaintiff supervised complained to Schmidt that they could not understand Plaintiff when he spoke quickly, due to his foreign accent. Ahmed complained to the Human Resources Director of Store #1717, Tara Fotheringill ("Fotheringill"), about what he described as Schmidt's unfair treatment. However, Ahmed never claimed that Schmidt's behavior was due to Ahmed's race or national origin. Fothergill referred the matter to Lowe's Area Human Resources Director, Diane Chuprun ("Chruprun"). Ahmed had two meetings with Chuprun and Fothergill about Schmidt's behavior, in January and February of 2004 and Chuprun encouraged Ahmed to file a written complaint against Schmidt, but Ahmed declined. In or around March of 2004, someone in the Lowe's management spoke to Schmidt regarding Plaintiff's complaints.

In June 2004, Ahmed was involved in a dispute with a coworker over a customer refund in which he reportedly used profanity. As a result of this incident, Schmidt gave Ahmed a "Final Notice," which is a written warning regarding inappropriate behavior. Ahmed claims that he attempted to contact Ken Zrowka ("Zrowka"), Lowe's Regional Human Resources Director, who Ahmed believed was Schmidt's supervisor, about the write-up but Zrowka did not return his

2

phone calls.

On the evening of July 13, 2004, Ahmed had an argument with Dawn Madara ("Madara"), a Sales Manager, in front of Pamela Workman ("Workman"), a Department Manager. The incident apparently began when Madara told Ahmed that a sales associate whom they supervised had left the store crying. Madara claims that Ahmed became angry and began yelling at her, saying that the associate would no longer listen to his instructions because Madara was fraternizing with her and buying her lunch. Madara denied buying lunch for the sales associate and words were exchanged. At the end of the conversation, Madara claims that Ahmed walked over to her, grabbed her face between his hands, and kissed her on both of her cheeks. Ahmed initially denied that he kissed Madara, but admitted it in his deposition. However, he claims he did not take her face in his hands and that he only kissed one of her cheeks, not both. Plaintiff asserts that this was his way of apologizing to Madara for blaming her for the trouble with the associate. Madara then left the office, followed by Ahmed, followed by Workman. On the way out, Madara and Workman both allege that Ahmed grabbed Madara's buttocks. Madara reported the incident to Fotheringill in Human Resources seventeen (17) days later. She and Workman both gave written statements. In addition to their identical descriptions of the incident, both women recounted two previous instances where they allege that Ahmed had made inappropriate remarks to them.

After Fotheringill took statements from Madara and Workman, she contacted Chuprun, her superior. Chuprun visited Store #1717 to investigate, meeting first with Madara and Workman, who confirmed the information in their statements, and then with Ahmed. Initially, Ahmed denied that the incident with Madara had happened at all. Chuprun testified in her

3

deposition that Ahmed became defensive when he realized what the interview was about and left the store without giving her a statement or telling her where he was going. Chuprun forwarded her investigation report and the statements from Madara and Workman along to her boss, Ken Zrowka, with a recommendation that Plaintiff be terminated for violating the Lowe's No Harassment Policy. Lowe's Management approved Chuprun's decision and Plaintiff's employment was terminated. Neither Fotheringill nor Schmidt had any input in the decision to fire Ahmed, although Schmidt signed the Employee Performance Report which officially terminated Ahmed from Lowe's. (Def.'s Mot. for Summ. J., Ex. O).

As the Store Manager, it was Schmidt's responsibility to inform Ahmed of his termination. Schmidt called Ahmed at home on July 9, 2004 and asked him to come into the store, but Ahmed refused. Schmidt told Ahmed that he had been terminated. Plaintiff called the Employee Hotline to complain about his termination. He was informed that he could reapply to work at Lowe's in six (6) months, but that even if he did return to work there, he would lose his seniority.

### B.     Procedural History

This case is before the Court after a long period of discovery on Defendant's Motion for Summary Judgment. (Doc. No. 36). Plaintiff responded to Defendant's Motion (Doc. No. 38) and Defendant filed a Reply to Plaintiff's Response. (Doc. No. 41). The Court heard oral argument on all outstanding motions on July 15, 2008.

Plaintiff filed his Complaint against Lowe's on October 26, 2006. (Doc. No. 1). During discovery, Plaintiff filed two Motions to Compel Production of Personnel Records. (Doc. Nos.

4

11, 15).[2] Defendant responded, opposing the Motions to Compel. (Doc. No. 21). The Court ruled that Defendant must produce the Personnel Records of Tim Patches and Jeffrey Raffle and allowed Plaintiff to examine the Personnel Record of Heather Bailey. Defendant was also ordered to make Messrs. Patches and Raffle available for Plaintiff to depose them. (Doc. No. 22).

Defendant later filed a Motion to Quash Subpoena for Tara Fotheringill's Berks Homes Personnel Records (Doc. No. 30), which Plaintiff opposed. (Doc. No. 31). After reviewing the documents in camera, the Court granted Defendant's Motion to Quash. (Doc. No. 34).

## II.  Legal Standards

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. Id.

A party seeking summary judgment always bears the initial responsibility for informing the district court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial burden can be met

---

[2] Plaintiff filed an Amended Motion to Compel on the same day (Doc. No. 16).

simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." Id. at 325. After the moving party has met its initial burden, "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Under Rule 56, the Court must view the evidence presented in the motion in the light most favorable to the opposing party. Anderson, 477 U.S. at 255.

The burden-shifting analysis established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), is the appropriate analysis for summary judgment motions in cases alleging employment discrimination. Holness v. Penn State University, No. 98-2484, 1999 WL 270388 at *14 (E.D. Pa. May 5, 1999).

### III. Parties' Contentions

#### A. Plaintiff's Title VII, § 1981 and PHRA Claims

Plaintiff asserts that (1) he was fired in retaliation for his complaints about Schmidt and that those complaints were legally protected activity under Title VII; (2) he was fired because of his national origin and race; and (3) Lowe's created a hostile work environment. Plaintiff alleges that Defendant's stated reason for terminating him–that he sexually harassed a coworker–is merely a pretext.

Defendant claims that Plaintiff cannot establish a prima facie case of retaliation under Title VII because he cannot establish that (1) he engaged in a statutorily protected activity and (2)

6

there is a causal connection between Ahmed's alleged protected activity and his termination. Moreover, Defendant argues that Ahmed cannot show that Lowe's legitimate, non-retaliatory basis for his termination – sexual harassment of a female employee corroborated by her co-worker – is a pretext for unlawful retaliation.

Defendant asserts that Plaintiff cannot establish that he engaged in statutorily protected activity because when Plaintiff complained about Schmidt to Lowe's management, he never mentioned that he believed Schmidt was treating him badly because of his race or national origin, but rather simply complained about what he believed was general unfair treatment. See Barber v. CSX Distrib. Servs., 68 F.3d 694, 701-02 (3d Cir. 1995) (holding that plaintiff's letter to human resources department complaining of unfair treatment in general and not specifically complaining about age discrimination did not constitute protected activity). While Plaintiff does not assert that he ever stated to any authority that Schmidt's behavior toward him was due to prejudice, he claims that, in context, the Human Resources personnel he spoke to at Lowe's, given their training and experience, should have understood that Plaintiff was being discriminated against.

With regard to Plaintiff's discriminatory discharge claim, Defendant contends that Plaintiff cannot establish that there was any causal link between Plaintiff's national origin and race and Lowe's decision to terminate him. Plaintiff counters that a reasonable jury could conclude he was fired because of his race and national origin based upon Schmidt's unfair treatment and Lowe's failure to investigate this treatment.

Plaintiff also brings a hostile work environment claim. Defendant contends that Plaintiff has failed to allege conduct that was either severe or pervasive enough to survive summary

judgment; Defendant claims that the incidents Plaintiff alleges were isolated and minor. Nor, Defendant asserts, has Plaintiff presented adequate evidence that he was detrimentally affected by Defendant's conduct.

### B. Plaintiff's Claims of Negligence and Intentional Infliction of Emotional Distress

Defendant contends that Pennsylvania Workmen's Compensation Act ("PWCA") provides the exclusive remedy for work related injuries and that therefore this claim is barred. Defendant acknowledges that the PWCA allows for an exception in cases where the act causing injury was (1) intentional; (2) was one not normally expected in the workplace; (3) committed by a coworker or third party other than the employer; motivated by personal animus. Hettler v. Zany Brainy Inc. 2000 WL 1468550 *5 (E.D.Pa. Sept. 26, 2000). Defendant claims Plaintiff has not stated any claim that would make him eligible for this narrow exception. In the alternative, Defendant contends that Ahmed's allegations are insufficient to establish a claim for intentional infliction of emotional distress because he has offered no evidence that Defendant's conduct was "outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." Swanson v. Northwestern Human Servs., Inc., 2006 WL 3354145 *5 (E.D.Pa. Nov. 2, 2006).

## III. Discussion

### A. Plaintiff Cannot Make Out a Prima Facie Case of Retaliation

In order to establish a prima facie case of retaliatory discharge a plaintiff must show: (1) that he engaged in protected activity; (2) that he suffered an adverse employment action; (3) that there is a causal connection between the protected activity and the adverse employment action.

8

Moore v. City of Philadelphia, 461 F.3d 331, 340-341 (3d Cir. 2006). Plaintiff alleges that his complaints to Chuprun and Fothergill should be considered protected activity, but the Court must disagree. The record indicates that although Plaintiff did complain to Chuprun and Fothergill at least twice about Schmidt, there is no evidence in the record that he ever told them that Schimidt's unfair treatment was because of his race or national origin. See Barber, 68 F.3d at 701 (holding that the plaintiff's general complaints to the human resources department alleging that management had treated him unfairly did not constitute protected activity under Title VII where the plaintiff did not claim that he was being unfairly treated because of his age). See also Gharzouzi v. Northwestern Human Servs of Pa. 225 F. Supp. 2d 514, 540 (E.D.Pa. 2002) ("the complaint must specifically mention the plaintiff's belief that he was discriminated against on account of his membership in some protected class.") The Court therefore concludes that no genuine issue of material fact exists as to whether Plaintiff engaged in protected activity and that, therefore, Plaintiff cannot make out a prima facie case as to retaliatory discharge.

**B.     As To His Claims Of Intentional Discrimination, Plaintiff Has Failed to Produce Evidence of Pretext**

In order to establish a prima facie case of intentional discrimination, Plaintiff must show (1) he is a member of a protected class; (2) he was qualified for his position; (3) he suffered an adverse employment action; (4) he was discharged under circumstances that raise an inference of discrimination. Sarullo v. United States Postal Servs., 352 F.3d 789, 797 (3d Cir. 2003), cert denied 541 U.S. 1064 (2004). Plaintiff has made out the elements of a prima facie case that he was terminated because of his race and national origin, and therefore the burden shifts to Defendant to articulate a legitimate non-discriminatory reason for terminating Plaintiff. Moore,

9

461 F.3d at 340-341. Defendant has met this burden, by producing evidence that Plaintiff was fired based upon the reports it received from Ahmed's coworkers, Madara and Workman, that he had behaved inappropriately toward Madara by kissing her and grabbing her buttocks.

The burden then shifts back to Plaintiff to demonstrate that the reason proffered by Defendant is in fact a pretext and that Defendant fired Plaintiff because of his race and/or national origin. McDonnell Douglas Corp., 411 U.S. at 802. Plaintiff can make a showing of pretext by submitting evidence that either (a) casts sufficient doubt upon the legitimate reason proffered by Defendant so that the factfinder could reasonably conclude that the Defendant's stated reason is a fabrication; or (b) allows the factfinder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action. Fuentes v. Perskie, 32 F.3d 759, 762 (3d Cir. 1994). As the Court will explain below, Plaintiff has failed to meet his burden under either prong of Fuentes.

    i.    Fuentes Prong 1

To discredit the employer's proffered reason, the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent or competent. Id. at 762 citing Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 533 (3d Cir. 1992 cert denied, 510 U.S. 826 (1993). Rather, the nonmoving party must demonstrate such weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reason for its action that a reasonable fact finder could rationally find them unworthy of credence, and hence infer that the employer did not act for the asserted non-discriminatory reasons. Fuentes, 983 F.2d at 527.

Plaintiff's subjective belief that Lowe's decision to terminate him was wrong does not provide adequate evidence that Defendant's legitimate reason was merely a pretext for disability discrimination. See Billet v. CIGNA Corp., 940 F.2d 812, 825 (3d Cir. 1991) overruled in part on other grounds by St. Mary's Honor Center v. Hicks, 509 U.S. 502 (1993) ("the fact that an employee disagrees with an employer's evaluation of his does not prove pretext.") It is not the truth of the sexual harassment complaints against Plaintiff which is at issue, but rather the integrity of Lowe's decision-making process in terminating Plaintiff. Andy v. United States Postal Services, Inc. 2003 WL 22697194, at *9 (E.D.Pa., Oct. 24, 2003) aff'd 111 Fed. Appx. 670 (3d Cir. Nov. 1, 2004). Plaintiff does not dispute the steps taken by Lowe's prior to its decision to fire him, nor does he offer any evidence that Defendant's true reason for the termination was because of his national origin or race. See Id. at *9 (holding that the Court must look only at the perception of the decision maker, not the plaintiff's own view of his performance).

Defendant has provided evidence which Plaintiff has failed to rebut, showing it terminated Plaintiff because of his violation of the sexual harassment policy. This evidence includes deposition testimony from Chuprun, the primary decision maker and from Madara and Workman, who initially complained about Plaintiff's behavior. Their testimony was supported by the Lowe's Termination Report of Plaintiff (Def.'s Ex. O) and the Investigation Report which was filed by Chuprun after she investigated Madara's complaint, both of which discussed the complaints against Plaintiff and Defendant's response. (Id. at Ex. H). The fact that Plaintiff can show that he complained about Schmidt's behavior to Fotheringill and Chrupun on two occasions, months before he was terminated by Lowe's for violating their sexual harassment

11

policy, does not raise a genuine issue of material fact as to whether Lowe's actually fired Plaintiff because of his national origin or race because it does not cast doubt on Defendant's proffered non-discriminatory reason for firing Ahmed. See Kautz v. Met. Corp. 412 F.3d 463, 467 (3d Cir. 2005) (affirming the district court's grant of summary judgment where the plaintiff did not meet his burden of showing that the defendant proffered legitimate non-discriminatory reason was a pretext for discrimination) and Logan v. Countrywide Home Loans, 2007 WL 879010 at *6 (E.D.Pa. March 15, 2007) (Pollak, J.) (holding that nonmoving plaintiff must point to evidence contradicting the core facts put forward by the employer as the legitimate reason for the adverse employment action).

    ii.    Fuentes Prong 2

Under the second prong of the test set out in Fuentes, Plaintiff could establish that Defendant's proffered reason was pretextual by showing that an "invidious discriminatory reason was in fact, more likely than not a motivating or determining cause of his termination." Id. at *6 (citing Fuentes, 32 F.3d at 764). There are several ways a plaintiff may satisfy this prong: first, the plaintiff may show that the employer has previously discriminated against him, that the employer has previously discriminated against other members of the protected class or another protected class, or that the defendant has treated more favorably similarly situated people not within the protected class. See, e.g., Simpson v. Kay Jewelers, 142 F.3d 639, 645 (3d Cir. 1998). Ahmed has produced no evidence of other discriminatory actions taken by Lowe's against himself or other employees of Pakistani origin.

Second, Plaintiff might show pretext with overt evidence of discriminatory animus or indirect evidence of an ulterior actionable motive for the adverse employment action.

12

Discriminatory comments by non-decisionmakers, or statements temporally remote from the decision at issue, may be properly used to build a circumstantial case of discrimination. See Abrams v. Lightolier Inc., 50 F.3d 1204, 1214 (3d Cir. 1995). However, the comments or actions of one manager, while relevant, are not sufficient without more evidence to support an inference that race or national origin was the motivating factor for Plaintiff's termination. Logan, 2007 WL 879010 at *8 (citing Waldron v. SL Indus., Inc., 56 F.3d 491 502 (3d Cir. 1995) (noting that comment by decision-maker five months before termination was not irrelevant but that standing on its own it would be insufficient to demonstrate that age discrimination was more likely than not a determinative factor in a decision to terminate).

The actions which Plaintiff alleges Schmidt engaged in – commenting that Ahmed's accent made him difficult to understand and calling him incompetent and a liar and a hypocrite – were too temporally attenuated from the decision to terminate Plaintiff to be adequate, in the absence of other evidence to show pretext. Their probative value is further diminished by the fact that none of the comments were directly related to Defendant's decision to terminate Plaintiff, and Schmidt was not a primary decisionmaker in the termination decision. See Logan, 2007 879010 at *8. While Schmidt did sign Plaintiff's Personnel Termination Form, Defendant presents evidence that this was merely a formality and that Schmidt was not a part of the termination decision. (Chuprun Depo. at p. 71). Plaintiff has failed to supply any evidence to rebut this contention. It is therefore this Court's conclusion that no genuine issue of material fact exists as to whether Plaintiff was fired because of his race or national origin.

### C. Summary Judgment Will Be Granted as to Plaintiff's Hostile Work Environment Claim

In order to state a claim under Title VII for discrimination resulting from a hostile work environment, an employee must show that 1) the employee suffered intentional discrimination because of his protected status; 2) the discrimination was pervasive and regular, 3) the discrimination detrimentally affected the employee; 4) the discrimination would detrimentally affect a reasonable person of the same race or national origin in that position; and 5) the existence of respondeat superior liability. Weston v. Pennsylvania, 251 F.3d 420, 426 (3d Cir. 2001). A plaintiff must show the existence of a hostile or abusive environment which is severe enough to affect the psychological stability of a minority employee. Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1081 (3d Cir. 1996).

To support his hostile work environment claim, Plaintiff points to his own testimony in his deposition, that as the only non-white manager, he was treated differently by his supervisor, Schmidt. Plaintiff contends that Schmidt called him incompetent, a hypocrite, and a liar, and that he was disciplined more harshly than other managers.

Plaintiff has quite simply failed to provide adequate evidence to show that a genuine issue of material fact exists as to whether Lowe's created a hostile work environment. Even when the Court considers the evidence in the light most favorable to Plaintiff and assumes that all of Plaintiff's allegations regarding Schmidt's conduct are true, they do not rise to a level that would allow a reasonable factfinder to adduce that Plaintiff was forced to work in a hostile environment because of his race or national origin. See Harris v. Forklift Systems Inc., 510 U.S. 17, 21 (1993) (discussing how a court should properly weigh a plaintiff's claims to determine whether he has been the victim of a hostile work environment). Nowhere does Plaintiff claim that Schmidt or any of his coworkers used racially insensitive language or threatened him because of his race.

14

The incidents which Plaintiff cites to support his claim are not of the severe or pervasive nature required. Id.

To support his claim Plaintiff relies mainly on two cases, <u>Webb v. Merck & Co. Inc.</u>, 2007 WL 2692243 (E.D.Pa. Sept. 11, 2007) and <u>Williams v. URS Corp</u>. 124 Fed.Appx 97 (3d Cir. 2005). <u>Webb</u> is an opinion denying a Defendant's Motion to Dismiss and <u>Williams</u> is an unpublished, non-precedential opinion. Neither of these cases can control the Court's decision in this matter. The Court's conclusion is supported by decisions on the requirements for hostile work environment harassment, such as <u>Harris v. Forklift Systems, Inc.</u> 510 U.S. 17 (1993), <u>Weston v. Pennsylvania,</u> 251 F.3d 420, (3d Cir. 2001), and <u>Caver v. City of Trenton</u>, 420 F.3d 243 (2005).

### D.  Plaintiff Conceded Negligence Claim

At oral argument on July 15, 2008, Plaintiff conceded his claim that Defendant was negligent in its termination of Ahmed.

### E.  Plaintiff's Intentional Infliction of Emotional Distress Claim is Barred by the PWCA.

This Court has consistently held that the PWCA bars claims for intentional infliction of emotional distress that arise of an employer-employee relationship. A narrow exception to this rule, referred to as the personal animus exception, is allowed in cases where the injury was caused by the act of a third person, intending to injure the plaintiff for personal reasons. 77 P.S. § 411(1). The critical inquiry in determining the applicability of the personal animus exception is whether the attack was motivated by personal reasons as opposed to generalized contempt or hatred, and was sufficiently unrelated to the work situation so as not to arise out of the

employment relationship. <u>Fugarino v. Univ. Servs.</u>, 123 F. Supp.2d 838, 844 (E.D.Pa. 2000).

Plaintiff claims that the personal animus exception should be applied to this case because he "alleges harassment and discrimination on the basis of his national origin/race, setups for failure, and constant singling out for scrutiny and discipline for no legitimate purpose except to belittle and insult, culminating termination [sic], are not conduct which is 'work related.'" (Pl's Resp. In Opp'n to Mot. for Summ. J., Doc. No. 38-2, at 31). Though Plaintiff cites many cases affirming the existence of the personal animus exception, none of these cases are factually similar to Plaintiff's case. Despite Plaintiff's claims to the contrary, all of the facts that he alleges to support his intentional infliction of emotional distress claim revolve around actions taken by Lowe's employees, while at work at Lowe's in commission of their job-related responsibilities. Plaintiff himself stated in his Complaint that his intentional infliction of emotional distress claim arises from events that occurred in the regular course and scope of employment. (Compl., Doc. No. 1, at ¶ 59-60). Therefore, the Court will grant summary judgment as to Plaintiff's intentional infliction of emotional distress claim.

## IV. <u>Conclusion</u>

For the foregoing reasons, the Court will grant Defendant's Motion for Summary Judgment as to all Claims.

An appropriate order to follow.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MASOOD AHMED, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| LOWE'S COMPANY INC. | : | NO. 06-4798 |

### ORDER

And now, this 31st day of July, 2008, for the reasons stated in the foregoing memorandum, and after considering the briefs and oral argument, the Court :

1. GRANTS the Defendant's Motion for Summary Judgment (Doc. No. 36), and enters judgment in favor of Defendant and against the Plaintiff.

2. DENIES Plaintiff's Motion to Strike Defendant's Statement of Undisputed Facts (Doc. No. 43).

3. The Clerk shall close this case.

BY THE COURT:

/s/ Michael M. Baylson
Michael M. Baylson, U.S.D.J.

Fax
O:\CIVIL\06-4798 Ahmed v. Lowe's\Ahmed v. Lowes S.J with edits.wpd

cc: Barton
Bashore
Elliott

```
*************** -COMM. JOURNAL- ****************** DATE JUL-31-2008 ***** TIME 15:15 ***********

              MODE = MEMORY TRANSMISSION          START=JUL-31 15:12    END=JUL-31 15:15

              FILE NO.=271

       STN   COMM.   ONE-TOUCH/   STATION NAME/TEL NO.                    PAGES      DURATION
       NO.           ABBR NO.

       001   OK      🕿            12159882757                            018/018    00:02:27
```

*********************************** -         - ***** -                    - **********

2:06-cv-04798-MMB

THOMAS JOSEPH BARTON
DRINKER BIDDLE & REATH LLP                Thomas.Barton@DBR.com
ONE LOGAN SQUARE
18TH & CHERRY STREETS                     215.988.2757
PHILADELPHIA PA 19103-6996

```
*************** -COMM. JOURNAL- ****************** DATE JUL-31-2008 ***** TIME 15:12 *********

         MODE = MEMORY TRANSMISSION        START=JUL-31 15:08    END=JUL-31 15:12

         FILE NO.=270

 STN   COMM.   ONE-TOUCH/   STATION NAME/TEL NO.                    PAGES     DURATION
 NO.           ABBR NO.

 001    OK        ☎          16106702591                           018/018    00:03:27
```

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* —        — \*\*\*\*\* —                       — \*\*\*\*\*\*\*\*\*

2:06-cv-04798-MMB

JEFFREY R. ELLIOTT  
KOZLOFF STOUDT  
2640 WESTVIEW DRIVE  
P.O. BOX 6286  
WYOMISSING PA 19610

610-670-2591  
jelliott@kozloffstoudt.com

```
************ -COMM. JOURNAL- ******************* DATE JUL-31-2008 ***** TIME 15:08 ********

             MODE = MEMORY TRANSMISSION              START=JUL-31 15:05     END=JUL-31 15:08

             FILE NO.=269

STN    COMM.    ONE-TOUCH/    STATION NAME/TEL NO.                    PAGES       DURATION
NO.             ABBR NO.

001     OK        ☎           12159882757                             018/018     00:02:30
```

*********************************** –        – ***** –                        – *********

2:06-cv-04798-MMB

AMY L. BASHORE                                         215-988-2757
DRINKER BIDDLE & REATH LLP                             amy.bashore@dbr.com
ONE LOGAN SQ
18TH & CHERRY STS
PHILADELPHIA PA 19103-6996